## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHARITY L. LOECHEL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-17

Black, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12) and the

Commissioner's response in opposition (Doc. 17).

### I. Procedural Background

Plaintiff filed applications for DIB in March 2010 and for SSI in April 2010, alleging

disability since August 31, 2009, due to chronic back pain, bipolar disorder, depression and

anxiety. These applications were denied initially and upon reconsideration. Plaintiff requested

and was granted a *de novo* hearing before administrative law judge (ALJ) Lorenzo Level.

Plaintiff appeared at two video hearings with counsel. Plaintiff testified at the first ALJ hearing.

At the second ALJ hearing, a vocational expert (VE) testified, but plaintiff did not testify. On

August 17, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

## II. Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4) (i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since August 31, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, obesity, depression, anxiety, bipolar disorder, and mood disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with further limitations. The [plaintiff] can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds. She can frequently finger and handle. She is able to understand, remember, and carry out simple instructions and perform simple tasks. She can occasionally interact with the public, coworkers, and supervisors.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1]Plaintiff's past relevant work was as a home attendant, manager of a general store, and cashier/checker. (Tr. 34).

7. The [plaintiff] was born [in] . . . 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 31, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform light jobs such as mail clerk; order caller, clerical; and assembler, production. (Tr. 35).

4

evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th

Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.  Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

On appeal, plaintiff argues (1) the ALJ's RFC for light work is not supported by the

record; and (2) the ALJ erred in relying on the VE testimony to find plaintiff could perform other

work at Step 5 of the sequential evaluation process.  (Doc. 12).

**1.  Whether the ALJ's RFC is supported by substantial evidence.**

*a.  Physical RFC*

Plaintiff argues the ALJ's RFC finding for light work is not supported by substantial

evidence given the nature of her back condition.  Plaintiff alleges the evidence shows she must

frequently alternate between sitting and standing and she is limited to 10 minutes of sitting, 5

minutes of standing, and 15 minutes of walking at one time.  Plaintiff asserts the objective and

clinical findings of record support these limitations.

In support of plaintiff's assertion that her ability to sit, stand, and walk are very limited

and that she must frequently alternate between sitting and standing, plaintiff cites to three records, none of which support her argument.  The first is a May 27, 2010 office note from Dr. William Tobler, plaintiff's treating neurosurgeon, noting plaintiff's subjective complaints that she could not stay in any one position for any length of time.  (Tr. 362).  Dr. Tobler did not give any assessment of plaintiff's functional capacity.  *Id.*  The second record is a December 2009 initial evaluation for physical therapy wherein the physical therapist noted plaintiff's subjective assertions that she was limited to 10 minutes of sitting, 5 minutes of standing, and 15 minutes of walking.  (Tr. 372).  The third record is an April 2010 flouroscopy of the spine demonstrating injection of contrast into the spine and says nothing about plaintiff's physical limitations.  (Tr. 410).

Plaintiff has not identified any medical evidence from a treating, examining or non-examining physician or other medical source that limits her ability to sit, stand, and walk as she alleges.  While plaintiff cites to numerous objective and clinical findings that she believes support these limitations (Doc. 12 at 11), she essentially relies on her own subjective statements about these limitations, which the ALJ found not fully credible.  Notably, plaintiff has not alleged the ALJ erred in assessing her credibility.  Nor has plaintiff explained why the ALJ's finding that plaintiff can perform a range of light work is not supported by substantial evidence or cited to any medical opinion undermining the ALJ's finding.  The fact that the evidence in the record could arguably support a contrary RFC finding is not a basis for reversal if the evidence reasonably supports the ALJ's conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999).  Plaintiff argument is not-well taken.

Next, plaintiff takes issue with the ALJ's finding that plaintiff can "frequently" finger and

6

handle. (Doc. 12 at 11). Plaintiff states that evidence submitted after the August 2012 hearing shows that she experienced increasing numbness in both hands, most notable in her dominant right hand; bilateral hand grasp weakness, right greater than left; diminished sensation; numbness and weakness in her arms and hands; positive Tinnels; and sensory loss at the right wrist confirmed by EMG in May 2012. (Doc. 12 at 11, citing Tr. 545, 561, 572, 574, 590, 593-595, 611, 616, 620). Plaintiff also alleges she has received a prescription for bilateral wrist splints and is awaiting insurance approval. She states that once she receives these splints, she must wear them for 23 of 24 hours per day and it is reasonable to conclude that the splints would limit her to at least "occasional" use of her hands. (Doc. 12 at 11).

The ALJ acknowledged that plaintiff's carpal tunnel syndrome was a severe impairment. (Tr. 28). However, the ALJ determined that plaintiff retained the ability to frequently[3] handle and finger despite this impairment. (Tr. 30, 32). This finding is supported by substantial evidence. As the ALJ reasonably noted, plaintiff's carpal tunnel syndrome was assessed as "moderate" in January 2012 (Tr. 593) and the musculoskeletal examination of her right and left wrists was completely normal. (Tr. 594). In addition, EMG evidence was largely within normal limits. (Tr. 610-11). Also, no medical source has imposed limitations on fingering and handling greater than those found by the ALJ. Finally, there is no evidence in the record that plaintiff has been prescribed bilateral wrist splints that she must wear for 23 out of 24 hours per day. The specific evidence cited by plaintiff above does not support this assertion. Plaintiff has failed to present evidence showing her limitations on handling and fingering are greater than those imposed by the ALJ. Plaintiff's first assignment of error should be overruled as it relates to her physical RFC.

---

[3]The term "frequent" means occurring from one-third to two-thirds of the time. *See* SSR 83-10.

   b. *Mental RFC and weight to treating physicians*

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

   "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the

ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Dr. Cynthia Villacis, plaintiff's primary care physician, opined that plaintiff is incapable of even low stress jobs. (Tr. 530). Dr. Teresa Cone, plaintiff's treating psychiatrist, opined that plaintiff would have extreme difficulty, if not a complete inability, to deal with the stress of unskilled work, function as a reliable worker, or deal with co-workers and the public as a result of her psychologically based symptoms from bipolar disorder and depression. (Tr. 526). Dr. Cone also reported extreme limitations in plaintiff's activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. 527).

In weighing the medical opinions of record, the ALJ gave "little weight" to Dr. Cone's

opinion that plaintiff had extreme limitations in the mental health domains.  (Tr. 34).  The ALJ stated that Dr. Cone's assessment was inconsistent with her own treatment notes, especially recent records showing improvement and a much higher degree of psychiatric functioning.  *Id.*  The ALJ also found that Dr. Cone's assessment was inconsistent with notes from Dr. Villacis, which show that despite plaintiff's symptoms from her mental impairments, she would not be precluded from having any interaction with others, be unable to complete or keep up with performing simple tasks, or be unable to manage anything in the household.  *Id.*  The ALJ did not assess Dr. Villacis' opinion that plaintiff was incapable of even low stress jobs.  The ALJ gave "significant weight" to the opinion of the consultative psychologist, Norman Berg, Ph.D., who opined that plaintiff was capable of simple tasks and could follow simple instructions; could attend and concentrate; functioned at an average pace; and would have some difficulty responding to supervision and coworkers.  The ALJ determined that Dr. Berg's assessment took "into consideration all of the medical evidence" and was based on a comprehensive examination that was consistent with treatment records.  *Id.*

Plaintiff contends the ALJ erred by failing to give proper weight to her treating physicians and by relying instead on the assessment of a one-time consultative psychologist in assessing plaintiff's mental RFC.  Plaintiff alleges that Drs. Villacis and Cone's assessments are supported by their treatment notes, which document evidence of anxiety, fearful thoughts, depressed mood, diminished interest or pleasure, fatigue or loss of energy, sleep disturbance, panic attacks, anxiety-related chest pain, manic episodes, poor concentration, crying spells, paranoia, agoraphobia, and episodes of hiding in a closet three times a week.  (Doc. 12 at 12, citing Tr. 445, 447, 452, 455, 458, 462, 464, 468).  Plaintiff acknowledges that the opinions of

10

her treating physicians conflict with that of Dr. Berg, the consultative psychologist, but she argues that the treating physicians' assessments were entitled to more weight given the length of their treatment relationship with plaintiff.

The Commissioner asserts the ALJ reasonably gave reduced weight to Dr. Cone's opinion of extreme functional limitations because the opinion was inconsistent with Dr. Cone's own treatment notes. The Commissioner cites to Dr. Cone's May 2012 treatment note showing plaintiff reported feeling "much better" with treatment and that her energy level was improving. (Tr. 544). The Commissioner also notes that plaintiff was "engaging in activities with her children at least once a week" and reported it was only "somewhat" difficult to meet home, work, or social obligations. (*Id.*). The Commissioner asserts that Dr. Cone's opinion conflicts with Dr. Villacis' notes, citing to a June 2011 treatment note showing anxiety, but no other remarkable findings on mental status examination. (Tr. 455). Although Dr. Villacis opined that plaintiff was incapable of even low stress work (Tr. 530), the Commissioner asserts that Dr. Villacis provided no explanation for this opinion. In addition, the Commissioner asserts that Dr. Cone's overly restrictive opinion was unsupported by plaintiff's activities of daily living, given plaintiff's ability to attend to her own personal hygiene, do some cooking and cleaning, and go shopping with assistance. The Commissioner also notes that as recently as 2010, plaintiff often babysat her nephew independently. Finally, the Commissioner contends the ALJ reasonably gave significant weight to the opinion of Dr. Berg, who examined plaintiff in March 2012, and plaintiff's argument to the contrary is nothing more than a disagreement over how the ALJ weighed the various medical opinions of record.

The Court determines that the ALJ's mental RFC finding is not supported by substantial evidence because: (1) he relied on the factually inaccurate premise that Dr. Berg's opinion was based on a review of "all of the medical evidence" in assessing plaintiff's mental RFC; and (2) he failed to account for the variations in plaintiff's level of mental functioning over an extended period of time.

Relying on the one-time examination by Dr. Berg in March 2012, the ALJ concluded that plaintiff had the mental RFC to understand, remember, and carry out simple instructions and perform simple tasks, and occasionally interact with the public, coworkers, and supervisors. The ALJ gave "significant weight" to Dr. Berg's assessment, stating that it took into consideration "all of the medical evidence" and was based on a comprehensive examination that was consistent with treatment records. *Id.*[4]

Contrary to the ALJ's representation, Dr. Berg did not consider "all of the medical evidence" in assessing plaintiff's ability to function. Rather, Dr. Berg stated he considered three reports only: a June 4, 2010 report on plaintiff's back impairment by Dr. Tobler, plaintiff's neurosurgeon; a July 5, 2011 report on plaintiff's low back impairment by Dr. L. Greiner, a consulting neurosurgeon; and an August 30, 2011 report by Dr. C. "Dillacis."[5] (Tr. 532). There is no indication that Dr. Berg considered any of Dr. Cone or Dr. Villacis' treatment records or Dr. Cone's RFC assessment before giving his opinion on plaintiff's functioning. Therefore, the

---

[4]The opinion of a non-treating but examining source like Dr. Berg is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010). *See also Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007). When deciding the weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. *Ealy,* 594 F.3d at 514 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

[5]It appears the reference to Dr. "Dillacis" may be a typographical error and that Dr. Berg was actually referring to Dr. "Villacis." In any event, the Court has not been able to locate an August 30, 2011 report by Dr. Villacis in the record.

ALJ's stated reason for giving significant weight to Dr. Berg's opinion is factually inaccurate.

The ALJ also stated that Dr. Berg's opinion was "consistent with treatment records." However, the ALJ provided no explanation or citation to the record for this conclusion, thereby precluding meaningful judicial review of his conclusion. In addition, by relying on the one-time examination of Dr. Berg, the ALJ failed to consider the fluctuating nature of plaintiff's mental functioning over time. The Social Security regulations recognize the need for longitudinal evidence in the case of mental impairments and that a claimant's level of functioning may vary considerably over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(2). As the level of functioning at any specific time may seem relatively adequate or, conversely, rather poor, proper evaluation of the severity of a claimant's mental impairments must take into account variations in levels of functioning over time. *Id*. The treatment records from both Drs. Cone and Villacis show that plaintiff's mental functioning fluctuated over the 1½ years that plaintiff was treated at HealthSource of Ohio, where both physicians practiced and treated plaintiff for depression and bipolar disorder.

In January 2011, plaintiff was diagnosed with major depression with anxiety. At this time, she reported experiencing crying spells, problems sleeping, constant thinking, and feeling anxious and panicky. (Tr. 468). On mental status examination[6], plaintiff presented with a depressed affect, flight of ideas, poor insight, and poor attention span and concentration. She was positive for anhedonia, and was anxious, fearful, forgetful, hopeless, and paranoid, but

---

[6]"The mental status examination is performed in the course of a clinical interview and is often partly assessed while the history is being obtained. A comprehensive mental status examination generally includes a narrative description of your appearance, behavior, and speech; thought process (e.g., loosening of associations); thought content (e.g., delusions); perceptual abnormalities (e.g., hallucinations); mood and affect (e.g., depression, mania); sensorium and cognition (e.g., orientation, recall, memory, concentration, fund of information, and intelligence); and judgment and insight. The individual case facts determine the specific areas of mental status that need to be emphasized during the examination." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(4).

13

without suicidal ideation. She socially isolated herself due to fears that people were looking at her. (Tr. 467-468). She was prescribed medication.

In March 2011, plaintiff again presented with a flat affect. She was positive for anhedonia, and was anxious, fearful, forgetful, and paranoid, but without suicidal ideation. The clinical assessment was major depression, "[n]ow with worse anxiety and some paranoia." (Tr. 465). Plaintiff reported that she became so panicky that she had to leave the mall and abandoned her teenage daughter there, for which she felt very guilty. (Tr. 464-465). It was also noted that her medications, Lexapro and Effexor, were not working. *Id.*

In April 2011, plaintiff reported that she had thoughts about escaping, did not want to be around others, and was spending time in her closet because she did not want to yell at her family members. (Tr. 462). She further reported problems with concentration, feeling overwhelmed, and crying spells. (*Id.*). Later that month, her mental status was improved, although she still presented as anxious. (Tr. 460-61).

In May 2011, plaintiff's status was unchanged and she reported that it was "somewhat" difficult to meet home, work, or social obligations. (Tr. 458). Plaintiff reported that she had stopped taking Seroquel because she was waking up with migraines. (*Id.*). Dr. Villacis commented that plaintiff had more bad days than good, but she did have some good days. (Tr. 459). Dr. Villacis determined that plaintiff was experiencing symptoms of a major depressive episode. (Tr. 458).

In June 2011, Dr. Villacis noted that plaintiff was having problems going out of the house, felt she was being judged, and was hiding in her closet three times per week. (Tr. 455). On mental status examination, plaintiff was anxious and paranoid. She exhibited poor judgment,

14

but she had normal attention span and concentration.  (Tr. 455, 452).  Plaintiff reported she had

gone to the emergency room the previous day for chest pain, but she left against medical advice

"due to increased anxiety with people staring at her and they wouldn't move her to a room."  (Tr.

451).

In July 2011, plaintiff reported panic attacks when going out of her house.  (Tr. 447).

Plaintiff's mental status exams were unremarkable in July and August 2011, and plaintiff

reported it was "somewhat" difficult to meet home, work, or social obligations.  (Tr. 445-48).

By October 2011, however, plaintiff reported it was "extremely" difficult to meet home, work or

social obligations.  Her status was "worsening" and she had the symptoms of a major depressive

disorder.  Dr. Villacis reported that plaintiff "has bipolar depression that is severe and hasn't

been responding to treatment."  (Tr. 600).  On mental status exam, plaintiff was anxious and

tearful, but without suicidal ideation.  (Tr. 598).  Dr. Villacis also noted that plaintiff was to start

treatment with Dr. Cone, a psychiatrist at HealthSource.  (Tr. 600).

In a letter dated October 24, 2011, Dr. Villacis noted that she had been treating plaintiff

for several months for bipolar depression without much improvement in her symptoms.  (Tr.

530).  She also noted that she had tried to refer plaintiff to Lifepoint in Amelia (a mental health

facility), but she was unable to tolerate going there due to chaos in the waiting room.  (*Id.*).  She

reported symptoms that included crying, irritability, problems sleeping, suicidal ideation, and

problems concentrating, as well as lower back pain that radiated to both feet.  (*Id.*).  Dr. Villacis

opined that plaintiff was not malingering and that plaintiff would be incapable of even low stress

jobs at that point in time.  (*Id.*).

Plaintiff then began treatment with her psychiatrist, Dr. Cone.  Dr. Cone submitted a

medical source statement in October 2011 and assessed significant problems with plaintiff's ability to maintain regular attendance, work with others, make simple work-related decisions, complete a normal workday and workweek without interruptions from both physical and psychological symptoms, get along with coworkers or peers without unduly distracting them, and deal with normal work stress. (Tr. 526). She further noted that treatment of plaintiff's bipolar depression was complicated by her experience of chronic pain, which causes her problems with attention span, irritability, and angry outbursts. (*Id.*). Dr. Cone noted that as a result, plaintiff isolates herself from her family out of fear of outbursts and upsetting her children. Clinical findings included: alert and oriented to person, place, time and situation; cooperative; good eye contact; groomed; uncomfortably shifted in chair at times due to pain; displayed psychomotor retardation; speech: had regular rate and rhythm, tone, volume; mood was depressed and irritable; affect was constricted and tearful at times; thought process was linear; denied suicidal or homicidal ideation or audio visual hallucinations; compulsion to find irrelevant items and pilfered through belongings frequently; cognition grossly intact; no complaints of memory problems; and insight and judgment fair. (Tr. 524). Dr. Cone also noted that plaintiff's depression and pain "interfere with her ability to function at home such that she is functionally incapacitated to the point that her mother moved in to care for the home and children." (*Id.*). Dr. Cone also assessed extreme restrictions in plaintiff's activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 528). She reported that plaintiff's depression and irritability impair her ability to tolerate frustration and she experienced inappropriate outbursts at home with her family. (Tr. 527).

In February 2012, Dr. Cone's mental status exam indicated that plaintiff's sleeping problems persisted; she appeared well groomed and appropriate; she was oriented to person, place, time and situation; her behavior was "described as rigid and not turning neck"; her psychomotor behaviors were hypoactive; her speech was appropriate; and her affect was constricted with mild irritation. (Tr. 563). Dr. Cone reported that plaintiff's mood was euthymic, but she had poor reasoning, impulse control, and judgment and fair insight. (Tr. 564). Plaintiff reported it was "extremely" difficult to meet home and social obligations. (Tr. 561). In March 2012, Dr. Cone reported that plaintiff's medication response was "worsened." On mental status exam, plaintiff's mood was depressed and her self-perception was abasing. She had fair reasoning, impulse control, judgment, and insight. (Tr. 558-59). Plaintiff again reported that it was "extremely" difficult to meet her home and social obligations. (Tr. 558). In April 2012, Dr. Cone reported that plaintiff continued to have sleep problems and an abasing self-perception. Her mood was euthymic and affect was bright and appropriate. (Doc. 553). In May 2012, plaintiff reported it was "extremely" difficult to meet her home and social obligations. Dr. Cone's notes reflect symptoms of a major depressive episode including ruminative thinking, poor concentration, indecisiveness, sleep disturbance, and thoughts of death or suicide. (Tr. 544, 545). Dr. Cone assessed minimal improvement with medication and noted depressed mood on mental status examination. (Tr. 546-48). Plaintiff's attention was "gained and maintained," and she had good reasoning, impulse control, judgment, and insight. In June 2012, plaintiff reported that she felt "much better" and her energy level was improved but still low. Dr. Cone reported that plaintiff was "engaging in activities with her children at least once weekly, regardless of how she feels which is new." (Tr. 544). However, plaintiff continued to experience poor

concentration, indecisiveness, sleep disturbance, and thoughts of death or suicide.  (*Id.*).

The ALJ failed to adequately assess plaintiff's mental functioning and failed to account for the fluctuations in plaintiff's level of functioning over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(2).  Dr. Berg's opinion, which is based on his one-time examination in March 2012, does not constitute substantial evidence to support the ALJ's conclusion on plaintiff's mental functioning from January 2011 through the date of the ALJ's August 2012 decision, especially where there is no indication Dr. Berg considered the treatment notes of plaintiff's treating physicians.  In contrast, the treatment notes from Drs. Villacis and Cone and the functional assessment from Dr. Cone provide a more comprehensive picture of plaintiff's functioning over time.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

The ALJ suggests that Dr. Berg's opinion is more consistent with plaintiff's functional limitations because Dr. Cone's more recent progress notes show improvement with treatment and higher functioning.  But improvement is a relative concept and is dependent on the base level from which the improvement is measured.  As recognized by the Sixth Circuit:

> Even if [a doctor's] use of the word "better" referred to Plaintiff's mood, this word did not provide the ALJ with substantial evidence from which to find that Plaintiff's mental impairment had subsided.  The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved.  Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment.  This cannot be so.

18

*Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493-494 (6th Cir. 2011).  In this case,

the ALJ made no attempt to explain how any improvement in plaintiff's mental functioning

affected her ability to deal with ordinary work stresses and perform the tasks required for regular

and sustained work activity.  Even if plaintiff's limitations in 2012 were not as "extreme" as they

were in October 2011 when Dr. Cone wrote her report, plaintiff's functioning, though

"improved," may nevertheless still be sufficiently severe to preclude work activity.  Given the

fluctuating nature of plaintiff's symptoms, the ALJ should have given some indication that he

considered this fact in giving "little weight" to the opinions of plaintiff's treating psychiatrist and

"significant" weight to the one-time examining psychologist.

The ALJ also stated that Dr. Cone's opinion was not consistent with notes from Dr.

Villacis, which show that plaintiff's symptoms do not impair her "to the extent that they would

preclude her from having any interaction with others, or be unable to complete or keep up with

performing simple tasks" or "not be able to manage anything in the household."[7]  (Tr. 34).  Yet,

Dr. Villacis opined that plaintiff would not be able to deal with the stress of work, and the ALJ

fails to explain how this is inconsistent with Dr. Cone's opinion on plaintiff's inability to deal

with work stress.  Nor does the ALJ explain how Dr. Villacis' progress notes, which document

crying spells, sleep problems, isolation, paranoia, rumination, irritability, anxiety, depression,

suicidal ideation, and problems concentrating, among others, are inconsistent with Dr. Cone's

opinion.  In addition, there is no indication the ALJ considered the length, nature and extent of

Dr. Cone's treatment relationship with plaintiff and the frequency of her examinations in

---

[7]In explaining plaintiff's limitations, Dr. Cone stated that plaintiff's "depression and pain interfere with her ability to function at home such that she is functionally incapacitated to the point that her mother moved in to care for the home and children."  (Tr. 526).

assessing the appropriate weight to afford the opinion of Dr. Cone. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. Thus, the ALJ failed to give "good reasons" for rejecting Dr. Cone's opinion based on the evidence in the record to enable this Court to conduct a meaningful review of the decision. *Wilson*, 378 F.3d at 544. Accordingly, the ALJ's mental RFC determination is without substantial support in the record and the ALJ's decision should be reversed and remanded for further proceedings.

### 2. Whether the ALJ erred at Step 5 of the sequential evaluation process.

At Step 5 of the sequential evaluation process – the availability of suitable work for a claimant – the ALJ may rely upon the testimony of a vocational expert. Such testimony can constitute substantial evidence, but it "must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Where the hypothetical question posed by the ALJ fails to accurately portray the plaintiff's limitations and RFC, the ALJ errs by relying on the VE's answer to the hypothetical. *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009).

Plaintiff argues that if plaintiff were limited to occasional reaching, handling and fingering, this would eliminate the jobs identified by the VE and relied on by the ALJ in meeting the Commissioner's Step 5 burden. As explained above, plaintiff has failed to present evidence showing her limitations on handling and fingering are greater than those imposed by the ALJ. Therefore, plaintiff's Step 5 argument, which is based on the premise that she is limited to only "occasional" handling and fingering, is without merit.

Plaintiff also argues the ALJ erred by relying on VE testimony that did not account for

20

the additional non-exertional limitations found by plaintiff's treating physicians in assessing the availability of work in the national and regional economy under Step 5.  As discussed above, the ALJ's reasons for discounting the opinions of Dr. Cone and for giving "significant weight" to Dr. Berg's conclusions lack substantial support in the record.  As the ALJ's RFC formulation was essentially an adoption of Dr. Berg's conclusions, the hypothetical question presented to the VE based on this RFC formulation does not properly reflect plaintiff's limitations.  Therefore, the ALJ erred by relying on this vocational testimony to carry his burden at Step 5 of the sequential evaluation process. *See White*, 312 F. App'x at 789 (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments).  Because the ALJ's hypothetical questions failed to accurately portray plaintiff's limitations, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE.

Accordingly, plaintiff's second assignment of error should be sustained and this matter should be reversed and remanded with instructions to the ALJ to provide a hypothetical question to the VE that accurate portrays plaintiff's mental impairments as determined by the ALJ after re-weighing the opinion evidence and formulating a consistent RFC.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994).  This matter should be reversed and remanded for further proceedings with instructions to

the ALJ to re-weigh the medical and other opinion evidence in accordance with this decision; to reconsider plaintiff's RFC; and for further medical and vocational development as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/26/15

Karen L. Litkovitz
United States Magistrate Judge

22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHARITY L. LOECHEL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-17

Black, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).